**LITTLE AUDREY'S TRANSPORTA-TION CO., INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. No. 72–0–342.

United States District Court, D. Nebraska.

Jan. 16, 1974.

Altheimer & Gray, Chicago, Ill., Kutak, Rock, Cohen, Campbell, Garfinkle & Woodward, Omaha, Neb., for plaintiff.

Michael D. Howard, Tax Div., Dept. of Justice, Washington, D. C., William K. Schaphorst, U. S. Atty., Omaha, Neb., for defendant.

## MEMORANDUM OPINION

SCHATZ, District Judge.

This is a suit for the recovery of federal highway use taxes assessed by the Internal Revenue Service under 26 U.S.C. § 4481. The plaintiff has paid a portion of the assessed tax and has brought this suit to recover the amount paid. The government has filed a counterclaim for recovery of the unpaid amount.

The plaintiff is Little Audrey's Transportation Co., Inc., a New Mexico corporation, having its principal place of business in Fremont, Nebraska. During the periods of July 1, 1966, to June 30, 1967, and July 1, 1967, through June 30, 1968, plaintiff leased trucks from individual owners for use in its business as an interstate and intrastate motor carrier. The Internal Revenue Service originally proposed assessment against plaintiff for seventy-four vehicles for the year ending June 30, 1967, and ninety-seven vehicles for the year ending June 30, 1968. All of these vehicles were leased to but not owned by the plaintiff. The government subsequently determined that the applicable tax had been paid for twenty-eight of the 1967 vehicles and fifty-two of the 1968 vehicles, but that no tax had been paid on the remaining vehicles. The plaintiff asserts that for these twenty-eight and fifty-two vehicles, the tax was paid by the owner-lessors, but the government has avoided admitting this. In any event, it is agreed that tax is due on forty-six vehicles for 1967 and forty-five for 1968. The question is whether the plaintiff is liable for this tax.

26 U.S.C. § 4481 establishes a tax on the use of highway motor vehicles. Section 4481(b) deals with who is to pay the tax and it provides:

(b) *By whom paid.*—The tax imposed by this section shall be paid by the person in whose name the highway motor vehicle is, or is required to be, registered under the law of the State in which such vehicle is, or is required to be, registered, or, in case the highway motor vehicle is owned by the United States, by the agency or instrumentality of the United States operating such vehicle."

There is no statutory definition of the term "registered" but the Treasury Regulations contain this definition:

Section 41.4481–3 *Registration.*

(a) For purposes of the regulations in this part, the term "registered" when used with reference to a highway motor vehicle means:

1) Registered under the law of any State or Territory of the United States or of the District of Columbia, or

2) Required to be registered under the law of any State or Territory of the United States in which such highway motor vehicle is operated or situated or in case the vehicle is operated or situated in the District of Columbia, under the law of the District of Columbia.

\* \* \* \* \* \*

(b) Any highway motor vehicle which, at any time in the taxable period, is registered both in the name of the owner of the vehicle and in the name of any other person, is considered, for purposes of the regulations in this part, to be registered, at such time, solely in the name of the owner of the vehicle. 26 C.F.R. § 41.4481–3.

Upon stipulation of the parties the suit has been submitted to the Court without formal trial, and the Court's findings of fact and conclusions of law are based upon the exhibits, briefs and oral argument offered by the parties.

It has been stipulated that the trucks in issue were base-plate licensed in the plaintiff's name in California. It is also stipulated that the trucks were issued permits and prorate licenses in Wisconsin in the names of both the plaintiff and the individual owners.

Plaintiff asserts that a joint registration sufficient to cause tax liability to arise was accomplished by the plaintiff as operator-lessee and by the owner-lessors under Wisconsin law. Therefore, the plaintiff argues, by the dual registration regulation, Section 41.4481–3(b), the owner-lessors and not the plaintiff are liable for the tax.

The government asserts that the plaintiff has accomplished an adequate registration under the California law only, not under Wisconsin law, and since the vehicles are registered only in plaintiff's name in California, plaintiff is liable for payment of the tax. In the alternative, the government argues that even if plaintiff is considered registered in both states, the only type of registration envisioned by the federal tax statute was the type accomplished in California (base-plate), not the type in Wisconsin (prorate), and therefore, plaintiff is still liable for payment of the tax.

There are three issues to be resolved by the Court in this case:

1) What was the nature of the compliance effected under California state law?

2) What was the nature of the compliance effected under Wisconsin state law?

3) Whether either or both of these compliances constitute registration for purposes of 26 U.S.C. § 4481, the Federal Highway Use Tax statute.

There have been no reported cases dealing with interpretation of the term "registered" in 26 U.S.C. § 4481. (Controversies over the meaning of the term "owner" under Treas.Reg. Sec. 41.4481–3(b) have been reported. *See* Grain Belt Transportation Co. v. United States, 465 F.2d 1202 (10th Cir. 1972); Steel Haulers, Inc. v. United States, 316 F.Supp. 707 (W.D.Mo.1970), aff'd per curiam, 440 F.2d 1176 (8th Cir. 1971).)

Nor does the legislative history of the statute as passed in 1956 or as amended in 1961, provide any assistance. See S. Rep.No. 1965, 84th Cong.2d Sess., 1956 U.S.Code Cong. and Admin.News at 2872; S.Rep.No. 2054, 84th Cong., 2d Sess., 1956 U.S.Code Cong. and Admin. News at 2851; H.Conf.Rep.No. 2436, 84th Cong., 2d Sess. 1956 U.S.Code Cong. and Admin.News at 2889; S. Rep.No. 293, 87th Cong., 1st Sess., 1961 U.S.Code Cong. and Admin.News at 1788; S.Rep.No. 367, 87th Cong., 1st Sess., 1961 U.S.Code Cong. and Admin.

News at 1809; H.Conf.Rep.No. 564, 87th Cong., 1st Sess., 1961 U.S.Code Cong. and Admin.News at 1835.

Therefore, it appears that this is a matter of first impression and that Congress has given no indication of the meaning it intended for the term "registered."

It is apparent that a great deal of significance attaches to the word "registration." Read in the abstract, the taxing statute gives the impression that there are certain definitive criteria which establish whether in any state "registration" has been accomplished. Unfortunately, this is not so. Each state requires compliance with its own motor vehicle registration laws by every commercial vehicle which passes through that state. However, the compliance required by each state is not uniform. There are different types and amounts of licensing, fee payments and taxation throughout the various states. Because many vehicles pass through a large number of states, arrangements have been reached by the states whereby some vehicles are not required to follow the full procedure for every state through which they pass. By these arrangements the states recognize the differences in terminology, fees, and procedures which exist among them, and member states agree to relax their own requirements for out-of-state vehicles in return for substantially similar treatment of their own vehicles by other member states.

These arrangements may be on a multi-state or on a state-by-state basis. A number of such agreements have been introduced as exhibits. California is a member of the Uniform Vehicle Registration Proration and Reciprocity Agreement (U.V.R.P. & R.A.), a multi-state compact. Wisconsin is not a member of any such compact but enters into agreements on an individual basis with other states. Unfortunately these exhibits use the general terms "registration"

or occasionally "licensing" to cover the specific requirements of individual states.

With one exception, all of the agreements operate on the principle that if a vehicle has accomplished an adequate compliance with the statutes of a member state no additional compliance with the corresponding statutes of the other member states is necessary. This type of agreement is generally referred to as reciprocity.

The exception mentioned above is found in the U.V.R.P. & R.A., which contains a system called proration. Under proration an owner may register a fleet of vehicles in any member state by paying to that state a percentage of the normal fees for the vehicles based on the number of in-state miles driven as compared to total miles driven. The fleet must designate a base state,[1] the only purpose for which is that each fleet vehicle is then issued the license plates and registration card of the base state.

The U.V.R.P. & R.A. also has a system of reciprocity as discussed above for vehicles which do not qualify for proration. For purposes of reciprocity under this compact, the initial state in which full compliance with state laws is made (or as the agreement says, the state in which the vehicle is "properly registered") is termed the base state.

## I.

## PLAINTIFF'S COMPLIANCE WITH CALIFORNIA LAW

It is stipulated that the vehicles were base-plate licensed in California in the plaintiff's name only. This term, however, is not defined or referred to in the California statutes. West's Annotated California Vehicle Code, Section 4000, requires that all motor vehicles operated on California highways be "registered." With respect to commercial vehicles, the state Reciprocity Commission is autho-

---

1. Section 14(a) of the U.V.R.P. & R.A. defines base state to be: " * * * the State from or in which the vehicle is most frequently dispatched, garaged, serviced, maintained, operated, or otherwise controlled, or also in the case of a fleet vehicle, the State to which it is allocated for registration under statutory requirements."

rized by statute to enter into agreements with other states for reciprocal [2] and proportionate [3] registration.

In addition, Section 8151 permits proportionate registration of fleet vehicles without regard to registration in other states.[4]

The record does not disclose whether plaintiff's compliance with California law is under Section 8151, or is a form of reciprocity under the U.V.R.P. & R.A., or is a form of proration under the U. V.R.P. & R.A. But it is unnecessary to decide this point because it is clear that under any of these methods, plaintiff has chosen California to be the state for which it has made full initial compliance with state "registration" laws and it is this state which plaintiff uses as a reference point for the privilege of avoiding full compliance with the registration laws of other states through which plaintiff's vehicles pass.

## II.

## THE PLAINTIFF'S COMPLIANCE WITH WISCONSIN LAW

It is stipulated that all of the vehicles in question were issued permits and prorate licenses in Wisconsin in the name of both the plaintiff and owner-lessors. Wisconsin requires all motor vehicles to be registered unless they are exempt from registration, West's Wisconsin Statutes Annotated, Section 341.04. Section 341.05 lists exempted vehicles, and Section 341.05(2) states that a vehicle is exempt when it:

2. Section 8000: The Reciprocity Commission may enter into agreements or arrangements with duly authorized representatives of any foreign jurisdiction, provinces or country granting exemption to owners of or persons entitled to the possession of or right to operate commercial vehicles which are properly registered or licensed or for which fees have been paid in such jurisdictions, and upon which evidence of registration or payment of fees is conspicuously displayed, from the payment, wholly or partially, of any vehicle license, registration, or weight fees imposed under this code . * * *.

3. Section 8002: It shall be incumbent upon the commission, whenever practicable, to en-

Is operated in accordance with the provisions exempting nonresident or foreign-registered vehicles from registration;

Section 341.41 authorizes reciprocity agreements:

(1) The administrator with the approval of the governor is authorized to enter into reciprocal agreements with the responsible officers of other jurisdictions as to licenses, permit fees, mileage and flat taxes under which motor vehicles, trailers, or semi-trailers *properly licensed or registered in other jurisdictions may be operated in interstate commerce in this state without a Wisconsin registration* or the payment of permit fees or mileage or flat taxes, provided like privileges are accorded to vehicles owned by Wisconsin residents when operated in such other jurisdictions. Such agreement may include such restrictions, conditions and privileges, including any proportional registration, taxes or fees, as are deemed advisable. *Such agreement shall provide that a resident of this state when using the highways of such other jurisdiction shall receive exemptions of a similar kind to a like degree.*

(1a) The administrator with the approval of the governor is authorized to enter into reciprocal agreements with the responsible officers of other jurisdictions as to licenses, permit fees, mileage and flat taxes under which motor vehicles, trailers, or semi-trailers *properly licensed or registered in*

ter into agreements or arrangements for the proportionate registration and licensing of vehicles or payment of fees therefor * * *.

4. Section 8151: Any person engaged in operating fleets of three or more commercial vehicles in this State in interstate commerce, may, in lieu of registration of the vehicles under the general provisions of Division 3 of this code (Section 4000, et seq. * * *) register and license each fleet for operation in this State by filing a verified application with the department.

*either jurisdiction, may be operated in intrastate commerce in either jurisdiction without additional base plate registration* or the payment of permit fees or mileage or flat taxes, providing like privileges are accorded Wisconsin licensed vehicles when operated in such other jurisdictions, *and that this state will obtain a fair and equitable share of license registrations.* Such agreement may include such restrictions, conditions and privileges, including any proportional registration, taxes or fees, as are deemed advisable. (Emphasis supplied.)

The above-quoted and emphasized portions of the statute suggest that compliance under a reciprocity agreement is something less than complete registration. However, that same statute also states:

(2) A non-resident operating a vehicle in this state is not exempt by virtue of any reciprocity agreement entered into pursuant to sub. (1) unless:

(a) The vehicle is properly registered in the jurisdiction of the residence of its owner, its domicile or the principal place of business of its owner or is registered on a proportional registration basis pursuant to an interstate compact; * * *

This confusing use of the term "registration" is unfortunate. Any confusion caused by the statute is compounded by the deposition of Mr. Wilbur Jensen, the Chief of Reciprocity for the Wisconsin Division of Motor Vehicles. When asked by counsel for the government whether a prorate compliance with the statutes, such as was made by plaintiff, would be a "full registration as such" he responded that it would not. Later he stated that plaintiff's proration would have been under an exemption from registration provision of the statute. However, when cross-examined by counsel for the plaintiff, Mr. Jensen stated that as a result of its prorate application, plaintiff was given a certificate of registration and was registered for interstate operations on Wisconsin highways.

Bilateral agreements between Wisconsin and the states of California, Nebraska, and New Mexico have been introduced in evidence. It is unclear from the evidence under which of these agreements the plaintiff acted when submitting its prorate application in Wisconsin. But since there is no evidence at all of any type of registration in Nebraska or New Mexico, the inference is that the California-Wisconsin agreement was the basis for plaintiff's prorate application in Wisconsin.

The Wisconsin statutes, the deposition of Mr. Jensen, and the California-Wisconsin agreement indicate that plaintiff's registration status in Wisconsin is essentially what was referred to earlier as reciprocity (although some of the fees may have been paid on a proportionate basis). That is, because plaintiff has accomplished a full registration in another state, it is permitted to avoid full compliance with all Wisconsin registration statutes. Plaintiff had, of course, fully complied with all Wisconsin registration requirements applicable to it, and had in that sense of the term, become "registered" in Wisconsin. But because of the special treatment permitted vehicles registered in other states, not all the Wisconsin registration requirements were applicable to plaintiff, and in that sense of the term, plaintiff was not fully "registered" in Wisconsin.

## III.

## "REGISTRATION" FOR PURPOSES OF THE FEDERAL HIGHWAY USE TAX

Given these two forms of registration by plaintiff in different states, the Court is called upon to decide whether either or both constitute "registration" within the meaning of 26 U.S.C. § 4481. Both parties assert that the case of Steel Haulers, Inc. v. United States, 316 F.Supp. 707 (W.D.Mo.1970), aff'd per curiam, 440 F.2d 1176 (8th Cir. 1971), is relevant and supports their respective positions. In *Steel Haulers*, the principal issue was whether both a lessee-oper-

ator and the lessor-owner of a motor vehicle met the Missouri statutory definition of "owner" and therefore, whether both were required under Missouri law to register the vehicle. The district court held that both were "owners" under the state statute and that, therefore, the dual registration provision of Treas. Reg.Sec. 41.4481–3 applied, making only the lessor-owner liable for the tax. The court of appeals affirmed in a *per curiam* opinion (Judge Bright dissenting).

Missouri is a member of a multi-state compact which appears to be identical to the U.V.R.P. & R.A. discussed earlier, and of which California is also a member. Missouri was the base state for the vehicles at issue in *Steel Haulers*. The government argues that the District Court in *Steel Haulers* implicitly agreed that the law of the base-state controls, and that this is some authority for this Court to reach a similar decision. In *Steel Haulers*, however, it is clear that the district court was not called upon to decide whether registration had been made in the base-state or in some other state. The issue was simply interpretation of a state statute defining the term "owner."

The plaintiff argues that because the *Steel Haulers* court found registration in the owner-lessor and the operator-lessee's names and then applied the dual registration regulation, that case is some authority for this Court in reaching a similar result. We do not agree. In *Steel Haulers*, the court found that the dual registration had occurred in one state. There was no claim of equal "registrations" in different states, as there is in this case. The plaintiff also points to language in *Steel Haulers* in which the Court stated that the fact that the Internal Revenue Service had assessed some of the owner-lessors who could be found, was some evidence that the dual registration regulation was ap-

plicable, 316 F.Supp. at 713. As mentioned before, the plaintiff states that such is the situation in this case, although the government has avoided admitting who paid the tax on the other vehicles originally assessed against plaintiff. But again, this discussion in *Steel Haulers* was in the context of determining whether there was a dual registration under the laws of one state, not multiple states.

The government also argues that if it is found that the plaintiff's compliance with California law and the plaintiff/owner-lessors' compliance with Wisconsin law are both regarded as sufficient to constitute registration under 26 U.S.C. § 4481, then both plaintiff and the owner-lessors are liable for the payment of the tax, and that under Treas. Reg. Sec. 41.4481–2(a)(1) [5] the tax may be recovered from either. But the full text of this regulation and the examples following it indicate that it is intended to apply to successive ownerships of the same vehicle during a single taxable period, and has no application to the case before the Court now.

Considering all of these arguments, the exhibits introduced, excellent briefs submitted by counsel, and the very few authorities available for reference, the Court is of the opinion that plaintiff's California compliance with state law constitutes "registration" under 26 U.S. C. § 4481, and plaintiff's Wisconsin compliance with state law does not. Although the terminology and procedures vary, the available documents, statutes, and agreements all seem to regard each vehicle as having one state with which it is primarily identified for purposes of complying with the registration laws of many states. (It is not always true that there is full initial registration in this one state alone, *i. e.*, the system of proportionate registration under the U.V. R.P. & R.A.; but even under this sys-

---

5. The language relied upon by the government is:
   In case more than one person is liable for the tax on the use of a particular highway motor vehicle for a taxable period, the lia-
bility of all persons for such tax is satisfied to the extent that the tax is paid by any person liable for the tax. 26 C.F.R. § 41.4481–2(a)(1).

tem a base state must be designated, if only for purposes of identification.)

The Court finds that California was the state with which the plaintiff's vehicles had become attached (for identification at the very least) for purposes of complying with the California registration statutes. It is clear that compliance with the Wisconsin registration statutes was made not on the basis of a full Wisconsin registration, but on the basis of some form of reciprocity for vehicles properly registered in another state, and the evidence discloses only one such possible state, namely California.

This Court is of the opinion that when Congress passed the federal highway use tax statute, it was cognizant of the various systems of state motor vehicle registration, and that it felt there would be one state with which a vehicle would be primarily identified for purposes of compliance with the registration laws of many states. In this case that state is California.[6]

The Court is aware, of course, that it would be possible for a vehicle to have full compliance with the laws of more than one state. But it appears that this is not what actually occurs in the industry. Rather, one of two things takes place. The vehicle is either registered initially in one state, and then by an agreement or series of agreements it is permitted to pass through other states without full registration; or the vehicle is registered initially in many states via a proportionate system (e. g., the U.V.R. P. & R.A. system, or the California § 8151 system), and is primarily identified with one state. However, the California these guidelines and the California registrant must pay the tax. It is undisputed that the California registration was in the name of the plaintiff only, and therefore, the Court finds that the

plaintiff is liable for the payment of the tax.

Judgment will be entered separately this day against the plaintiff on its claim and in favor of the defendant on its counterclaim.

---

6. The government is inclined to use the term "base-plate" state when referring to California. This term is used in some state statutes, e. g., Wisconsin, § 341.41(1a), but not by all. Also the term is used in some multi-state agreements, e. g., the U.V.R.P. & R.A., but not by all. The Court, therefore, does not hold that registration under 26 U.S.C. § 4481 necessarily means only "base-plate" registration.